**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| LI YE CAI, | DOCKET NUMBER |
| Appellant, | NY-1221-22-0060-W-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: April 22, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Li Ye Cai, Middle Village, New York, pro se.

Elizabeth Connelly, Esquire, and Frank Charles Sharp, Esquire, New York, New York, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the field office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is employed as a GS-12 Information Technology Specialist (ITS) in the Office of Information and Technology (OIT) for Customs and Border Protection (CBP), domiciled at John F. Kennedy International Airport. *Cai v. Department of Homeland Security*, MSPB Docket No. NY-1221-22-0060-W-1, Initial Appeal File (IAF), Tab 1 at 1. On March 20, 2020, the then-Governor of New York signed an executive order, commonly referred to as "New York State on PAUSE," aimed at "assur[ing] uniform safety for everyone" in light of the spread of the coronavirus. N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8 (2020); IAF, Tab 6 at 7-8; New York State, Governor Cuomo Signs the "New York State on Pause" Executive Order (Mar. 20, 2020) (March 20, 2020 Announcement), https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-pause-executive-order#:~:text=Governor%20Cuomo%20also%20announced%20%20%22Matilda's,and%20those%20with%20underlying%20illnessess. The executive order limited activities such as in-person business operations. N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8; IAF, Tab 6 at 7-10. A Governor's Office announcement regarding this executive order also announced, "Matilda's Law." IAF, Tab 6 at 7, 9-10; March 20, 2020 Announcement. According to the announcement, individuals 70 years or older generally were required to stay at home. IAF, Tab 6 at 7, 9-10; March 20, 2020 Announcement. However, the executive order itself did not include this provision. N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8.

That same day, the OIT Area Manager emailed a temporary telework schedule for the following 8 weeks, beginning on March 23, 2020. IAF, Tab 6 at 64. Pursuant to this schedule, the appellant, who at the time was 72 years old, was to work in the office for 4 of the following 8 weeks. *Id.* In contrast, two

younger coworkers were each scheduled to work in the office 2 of the 8 weeks. *Id.*

On March 24, 2020, the appellant emailed the OIT Area Manager, the Regional Director of OIT, and an agency official, objecting to the schedule on the basis that he was at a higher risk of contracting COVID-19 due to his age and informing them that the New York Governor was advising that New Yorkers "stay away from senior citizens." IAF, Tab 6 at 61-63. He attached to his emails a newspaper article stating that the New York Governor "said his most critical request of New Yorkers is to stay away from the most vulnerable," including "people who are over 70." *Id*. at 61-62. The appellant alleges that on March 25, 2020, one of his more junior colleagues fell ill from COVID-19.[2] *Id*. at 4.

On April 3, 2020, the OIT Area Manager sent out a new in-office schedule, covering the following 9 weeks, beginning on April 6, 2020. IAF, Tab 15 at 67-69. This schedule designated one of nine employees to cover each week, with the appellant scheduled to be in the office the week of May 25, 2020. *Id*. at 68. On April 9, 2020, the appellant's first-level supervisor sent an email to the appellant and others advising that the prior day "a special cleaning company [came] and wiped down all the desks in the OIT area and computer room. Once this was completed, they fogged the area with a disinfectant." *Id.*

Thereafter, the appellant claims he made disclosures and engaged in activities as follows: (1) on July 7, 2020, he emailed the CBP Commissioner, IAF, Tab 6 at 4-5; (2) on September 16, 2020, he emailed New York City Councilmember Robert Holden, *id*. at 55; (3) in October 2020, he filed a complaint with the New York State Division of Human Rights, *id*. at 36-45; (4) on October 13, 2020, he emailed the office of U.S. Representative Grace Meng, *id*. at 17-20; (5) in November 2020, he filed an Office of Special Counsel (OSC) complaint (MA-21-000299), which he appears to have amended around January 2021, *Cai v. Department of Homeland Security*, MSPB Docket No. NY-

---

[2] According to the appellant, his coworker later passed away. IAF, Tab 6 at 55.

0752-22-0142-I-1 (2022 removal appeal), Initial Appeal File (0142-I-1 AF), Tab 18 at 6; (6) on May 6, 2021, he emailed U.S. Senator Kirsten Gillibrand, IAF, Tab 6 at 50; (7) on June 21, 2021, he filed an OSC complaint (DI-21-000600) alleging prohibited personnel practices, 0142-I-1 AF, Tab 1 at 32-35; (8) on August 13, 2021, after receiving a final determination from OSC in his MA-21-00299 complaint, he filed his first IRA appeal with the Board, *Cai v. Department of Homeland Security*, MSPB Docket No. NY-1221-21-0142-W-1 (2021 IRA appeal), Initial Appeal File (0142-W-1 AF), Tab 1; (9) on August 18, 2021, he disclosed information to the agency's Office of Inspector General (OIG), IAF, Tab 6 at 52-53; (10) in 2021, he participated in another OSC investigation involving an unidentified coworker, IAF, Tab 5 at 8; and (11) on November 24, 2021, he filed his first chapter 75 appeal over his removal, raising an affirmative defense of whistleblower reprisal, *Cai v. Department of Homeland Security*, MSPB Docket No. NY-0752-22-0020-I-1, Initial Appeal File (0020 IAF), Tab 1 at 5. The aforementioned complaints included allegations that, in March 2020, the agency placed him at risk and violated the executive order and Matilda's Law when an on-site schedule required him to work in the office twice as often as younger colleagues, and the agency failed to clean and disinfect the premises after his colleague fell ill. IAF, Tab 5 at 8, Tab 6 at 4-5, 17-20, 45, 53, 55; 0142-I-1 AF, Tab 1 at 32-33, Tab 18 at 6; 0020 IAF, Tab 1 at 5.

According to the appellant, as a result of his disclosures and activity, he was subjected to retaliation, including the following: (1) on January 14, 2021, the agency issued him a proposed removal and placed him on administrative duty; (2) on August 5, 2021, the agency offered him a last chance agreement (LCA); and (3) on August 27, 2021, the agency issued him a removal decision. IAF, Tab 5 at 6.

The appellant submitted the underlying whistleblower reprisal complaint to OSC in December 2021, which was assigned the complaint number MA-22-000502. *Id*. at 10-32. OSC issued him a final determination letter on

January 21, 2022, and closed its investigation into his complaint. IAF, Tab 1 at 4-5.

The appellant then filed this IRA appeal with the Board. IAF, Tab 1. The administrative judge thereafter issued an order setting forth the appellant's burden to establish jurisdiction over his appeal. IAF, Tab 4. The appellant submitted a response, providing information regarding the aforementioned disclosures and activities and the personnel actions at issue. IAF, Tab 5 at 4-6. He also attached to his response a copy of his OSC complaint form and a written summary of his claims that he provided to OSC, a copy of OSC's final determination letter, and the "evidence and amendments filed with OSC." IAF, Tab 5 at 8-32, Tab 6. The agency responded to the appellant's submission. IAF, Tab 10 at 4-18.

The administrative judge issued an initial decision, dismissing the appeal for lack of jurisdiction. IAF, Tab 17, Initial Decision (ID) at 2, 15. She found that the appellant had exhausted the alleged personnel actions at issue as well as the alleged protected disclosures and activities enumerated above, except the July 7, 2020 email to the CBP Commissioner. ID at 10-11. The administrative judge also concluded that the appellant had failed to nonfrivolously allege that he made a protected disclosure. ID at 15. She did not separately address whether any of his alleged disclosures might constitute protected activities within the Board's IRA jurisdiction. *Id.* Finally, she concluded, without providing an explanation, that the appellant had failed to nonfrivolously allege that any protected disclosures and activities were a contributing factor in a personnel action. *Id.*

The appellant has filed a petition for review of the initial decision. *Cai v. Department of Homeland Security*, MSPB Docket No. NY-1221-22-0060-W-1, Petition for Review (PFR) File, Tab 1. The agency has filed a response, to which the appellant replied. PFR File, Tabs 3-4. On review, the appellant disputes the administrative judge's determination that the appellant failed to nonfrivolously

allege that he made a protected disclosure. PFR File, Tab 1 at 4-6. He also asserts that some of the matters the administrative judge treated as protected disclosures were protected activities. *Id.* at 6. He reargues that he established that his protected disclosures and activities were contributing factors in the personnel actions taken against him because the timing of the personnel actions coincided with the timing of when the agency learned about his disclosures and activities. *Id.* at 7; IAF, Tab 5 at 4-5.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal if the appellant has exhausted his remedies before OSC and makes nonfrivolous allegations that (1) he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 5.

<u>We address on review the appellant's March 24, 2020 disclosures, which the administrative judge overlooked.</u>

On review, the appellant alleges that the investigation that led to his removal began after his March 24, 2020 disclosure to a union official. PFR File, Tab 1 at 5; IAF, Tab 6 at 58-59. The administrative judge did not identify or address the appellant's March 24, 2020 emails in the initial decision. ID at 9-15. We find it appropriate to do so here.

Pro se pleadings are to be construed liberally. *Ingram v. Department of the Army*, 114 M.S.P.R. 43, ¶ 15 (2010). In a jurisdictional order, the administrative judge instructed the appellant to identify all of his protected disclosures and activities. IAF, Tab 4 at 7. The appellant did not list in his response his March 24, 2020 email to a union official, or similar emails to management on the same day, as an alleged protected disclosure or activity. IAF, Tab 5 at 5.

Further, they were not identified by OSC in its January 21, 2022 letter advising the appellant that it was closing its investigation into his claims. *Id.* at 8-9. However, in the documentation that he submitted in support of his jurisdictional response, he provided copies of these emails, as well as a summary of his claims that he submitted to OSC that identified the emails on a list of "Protected Disclosures/Activities." IAF, Tab 5 at 12-13, Tab 6 at 3, 58-63. We find this documentation was sufficient to raise the March 24, 2020 emails. Therefore, we address them on review.

<u>The administrative judge erred in finding that the appellant had not exhausted all of his alleged disclosures.</u>

The administrative judge found that the appellant exhausted his alleged disclosures, activities, and personnel actions with OSC, with two exceptions—the March 24, 2020 emails, which, as indicated above, she did not address, and his July 7, 2020 email to the CBP Commissioner. ID at 11. The parties do not dispute the administrative judge's determination that the appellant exhausted the remaining matters, and we discern no basis to disturb those findings on review. We further conclude that the appellant exhausted his March 24, 2020 emails and July 7, 2020 alleged disclosure.

An appellant satisfies the exhaustion requirement when he has provided OSC with a sufficient basis to pursue an investigation into his allegations of whistleblower reprisal. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. An appellant may demonstrate exhaustion through his initial OSC complaint or correspondence with OSC. *Id.*, ¶ 11. Alternatively, exhaustion may be proven through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in his appeal. *Id.* An appellant must prove exhaustion by preponderant evidence. *Id.*

In finding that the appellant did not exhaust his July 2020 alleged disclosure, the administrative judge declined to rely on evidence the appellant

stated that he submitted to OSC. ID at 11. This evidence included the summary of his claims that he provided to OSC. IAF, Tab 5 at 10-32. In the summary, he referred to his July 7, 2020 email to the CBP Commissioner and stated, "I attach the complete correspondence with [the CBP Commissioner]." *Id*. at 10. The appellant also provided with his jurisdictional response below a copy of the July 7, 2020 email, which he declared under penalty of perjury he had submitted to OSC. IAF, Tab 6 at 3-5. The appellant's OSC complaint and summary of claims, and his statement that he submitted the July 7, 2020 email to OSC, were sufficient to prove he exhausted the July 7, 2020 email. Further, as discussed above, the appellant identified to, and exhausted with, OSC his March 24, 2020 emails. Accordingly, we find that the appellant established by preponderant evidence that he exhausted his March 24 and July 7, 2020 emails.

The appellant made nonfrivolous allegations that he engaged in protected activity.

In her initial decision, the administrative judge found that the appellant failed to nonfrivolously allege that any of his communications regarding the agency's failure to take appropriate safety precautions, in violation of COVID guidelines, constituted protected disclosures. ID at 15. She did not issue a finding as to whether the appellant engaged in protected activity with respect to any of those complaints. On review, the appellant argues that this was error and that his complaints were protected. PFR File, Tab 1 at 4-6. We agree in part, as discussed below.

In the final decision in the appellant's 2022 removal appeal, we concluded that the appellant proved by preponderant evidence that he engaged in the following protected activities under 5 U.S.C. § 2302(b)(9): (5) his November 2020 OSC complaint (MA-21-000299); (7) his June 21, 2021 OSC complaint (DI-21-000600); (8) his August 13, 2021 IRA Board appeal; (9) his August 18, 2021 OIG complaint; and (11) his November 2021 chapter 75 removal appeal, in

which he raised a claim of whistleblower reprisal.[3]  *Cai v. Department of Homeland Security*, MSPB Docket No. NY-0752-22-0142-I-1, Final Order (0142-I-1 Final Order) (Jan. 26, 2024).  The nonfrivolous allegation standard needed to establish jurisdiction here is lower than the preponderance of the evidence standard needed to prove the appellant's claims on the merits.  *See Ingram*, 114 M.S.P.R. 43, ¶¶ 10, 20 (explaining that an appellant who made nonfrivolous allegations that he made a protected disclosure that was a contributing factor in a personnel action was required to prove his claims on the merits by preponderant evidence).  Because in the 2022 removal appeal, we found that the appellant proved that he engaged in this protected activity by preponderant evidence, we find that he necessarily met his jurisdictional burden with respect to the same claims.

<u>The appellant is collaterally estopped from asserting jurisdiction over disclosures (1), (2), (3), (4), and (6), and protected activity (10).</u>

Although not raised by either party on review, we find that the appellant is collaterally estopped from claiming what is identified above as alleged protected disclosures (1), (2), (3), (4), and (6) and protected activity (10).  Collateral estoppel, or issue preclusion, is appropriate when the issue is identical to that involved in the prior action, the issue was actually litigated in the prior action, the determination of the issue in the prior action was necessary to the resulting judgment, and the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action, either as a party to the earlier action or as one whose interests were otherwise fully represented in that action.  *Hau v. Department of Homeland Security*, 123 M.S.P.R. 620, ¶ 13 (2016), *aff'd sub nom. Bryant v. Merit Systems Protection Board*, 878 F.3d 1320 (Fed. Cir. 2017).  The Board has held that collateral estoppel may be grounds for dismissing an appeal for lack of jurisdiction if a jurisdictional determination in a

---

[3] For the sake of clarity, we will continue to use the numbering we assigned to the appellant's disclosures and activities earlier in this decision.  *See supra* pp. 3-4

prior decision is afforded collateral estoppel effect and the appellant provides no other valid basis of Board jurisdiction. *Id.* Further, when an appellant fails to prove a claim by preponderant evidence in an earlier appeal, he is barred by collateral estoppel from asserting jurisdiction over the same claim in a second appeal. *Id.*, ¶ 16. The Board will not adjudicate the claim a second time even if the lower nonfrivolous pleading standard would otherwise apply at the jurisdictional stage. *Id.*

In the 2022 removal appeal, we found that the appellant failed to prove that the following were protected disclosures: (2) his September 16, 2020 email to Councilmember Holden; (3) his October 2020 New York State Division of Human Rights complaint; (4) his October 13, 2020 email to Representative Meng; and (6) his May 6, 2021 email to Senator Gillibrand. We also found that the appellant failed to prove that his 2021 participation in a separate OSC investigation involving another colleague, identified as activity (10), was a protected activity. 0142-I-1 Final Order. The issue of whether these matters were protected disclosures or activity under 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D) is identical to the issue here, and our decision in the removal appeal is now a final decision. *See* 5 C.F.R. § 1201.113(c) (providing that if the Board grants a petition for review, the decision of the Board is final if it disposes of the entire action). Further, the issue was adjudicated on the merits after a hearing was held at the appellant's request. 0142-I-1 AF, Tab 1 at 2, Tab 33, Hearing Compact Disc. Resolving whether these claims constituted protected disclosures and activity was necessary to the resulting determination to deny corrective action in connection with the appellant's removal. He had a full opportunity to litigate the matter as a party in that action. Therefore, we find that the Board lacks jurisdiction over these alleged disclosures and activity.

Similarly, in an initial decision issued in the appellant's 2021 IRA appeal, an administrative judge found that the appellant failed to nonfrivolously allege that his email to the CBP Commissioner, identified as disclosure (1), above, was

protected. 0142-W-1 AF, Tab 32, Initial Decision (0142-W-1 ID) at 4-5. That determination was necessary to the administrative judge's dismissal of the appeal for lack of jurisdiction, and the appellant was a party. 0142-W-1 ID at 1, 7; 0142-W-1 AF, Tab 1 at 1. Neither party filed a petition for review, and that decision is now final. 0142-W-1 ID at 7; *see* 5 C.F.R. § 1201.113(a) (providing that an initial decision generally will become the Board's final decision absent a timely filed petition for review). Thus, we find that the appellant is also collaterally estopped from relitigating disclosure (1).[4]

<u>The appellant nonfrivolously alleged that his March 24, 2020 emails were protected disclosures.</u>

A protected disclosure is one that an appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 & n.3 (2013). The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer in his position with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced any of the conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶¶ 5, 8. Concerning a disclosure of a danger to public health or safety, the inquiry into whether a disclosed danger is sufficiently substantial and specific to warrant protection under whistleblower protection laws is guided by several factors, including (1) "the likelihood of harm resulting from the danger," (2) "when the alleged harm may occur," and (3) "the nature of the harm," i.e., "the potential consequences." *Chambers v. Department*

---

[4] In the initial decision issued in the appellant's 2021 IRA appeal, the administrative judge also found that the appellant failed to nonfrivolously allege that his emails to Representative Meng, identified as disclosure (4) above, were protected. 0142-W-1 ID at 5-6. Thus, in addition to being collaterally estopped based on the 2022 removal appeal, we find that the appellant is also collaterally estopped from relitigating disclosure (4) based on his 2021 IRA appeal.

*of the Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008). The appellant does not have to prove that harm occurred, but rather nonfrivolously allege that he reasonably believed the potential for harm was readily foreseeable. *See Chavez v. Department of Veterans Affairs,* 120 M.S.P.R. 285, ¶ 21 (2013) (finding that an appellant proved that her disclosure that nurses were not changing patients' dressings was protected, regardless of whether harm actually occurred, because it is readily foreseeable that failure to change such dressings could result in infection). Because the administrative judge did not identify the appellant's March 24, 2020 emails as alleged protected disclosures, she did not make findings as to whether the appellant met his jurisdictional burden.

We find that a reasonable person in the appellant's position with knowledge of the facts known to him on March 24, 2020, could have reasonably concluded that the agency's actions evidenced a substantial and specific danger to public health or safety, or any of the conditions set forth in 5 U.S.C. § 2302(b)(8). At that time, the guidance provided by the Centers for Disease Control and the New York Governor was that senior citizens over the age of 70 should shelter in place due to risk of serious injury or death cause by the COVID-19 pandemic. IAF, Tab 6 at 8-10, 60-62. In the appellant's emails to the OIT Area Manager and union representative, he objects to the original telework schedule, which had him scheduled to work in the office twice as often as his younger colleagues, on the basis that he was over the age of 70 and therefore in the "most vulnerable" population. IAF, Tab 6 at 58, 63. The perceived likelihood of severe personal and public harm from the virus—including the harm of death—was high and imminent at the time. In fact, the news article the appellant attached to his March 24, 2020 emails reflected that 5,151 people in New York City had tested positive for the virus and approximately 29 people had died. IAF, Tab 6 at 61.

In a comparable situation, the Board has found that the risk of danger posed by individuals with explosives or other prohibited items bypassing airport checkpoints was substantial and specific. *Aquino v. Department of Homeland*

*Security*, 121 M.S.P.R. 35, ¶¶ 14-17 (2014). Similarly, the U.S. Court of Appeals for the Federal Circuit concluded that a chief of police reasonably believed that the reduction in the number patrol officers on the Baltimore-Washington Parkway from four to two led to an increase in traffic accidents, and thus created a danger to public health and safety. *Chambers v. Department of the Interior*, 602 F.3d 1370, 1373, 1378-79 (Fed. Cir. 2010). We find that the likelihood, imminence, and severity of the harm in this case are at least as high as in *Aquino* and *Chambers*. Under these circumstances, we believe that the appellant has nonfrivolously alleged that he made a protected disclosure with respect to his March 2020 emails.[5]

The appellant nonfrivolously alleged that he was subjected to a personnel action.

The administrative judge found that the only alleged personnel action before her was the appellant's removal because the appellant was collaterally estopped from re-raising his proposed removal in this appeal and because a settlement offer of an LCA is not a personnel action. ID at 10. The administrative judge did not address whether the appellant's placement on administrative duty could constitute a personnel action. The parties do not dispute the administrative judge's findings on review. Nonetheless, we revisit

---

[5] In connection with the appellant's later alleged disclosures, the administrative judge observed that, despite its name, Matilda's Law consisted of a series of recommendations, rather than an actual "law." ID at 13; *see Allutto v. Commissioner of Labor*, 176 N.Y.S.3d 877, 879 (N.Y. App. Div. 2022) (concluding that "Matilda's Law, despite its moniker, is not an enacted law"). She also found that the executive order and Matilda's Law did not apply to the agency and that the appellant could not reasonably have believed that they did. ID at 12-15. In light of our finding here that the appellant nonfrivolously alleged that he reasonably believed that his March 24, 2020 disclosure evidenced a substantial and specific danger to public health or safety, we need not address the parties' arguments regarding whether he also nonfrivolously alleged that he reasonably believed that this disclosure evidenced that the agency violated a law, rule, or regulation. PFR File, Tab 1 at 4, Tab 3 at 4; *see Gabel*, 2023 MSPB 4, ¶ 6 (stating that a nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8)).

them here because the issue of the Board's jurisdiction is always before it and may be raised sua sponte by the Board at any time during a Board proceeding. *Francis v. Department of the Air Force*, 120 M.S.P.R. 138, ¶ 8 (2013).

We disagree that the appellant is collaterally estopped from re-raising his proposed removal, and we find that he has nonfrivolously alleged that his proposed removal and contemporaneous assignment from his ITS duties to administrative duties constituted personnel actions. We further conclude that the appellant is barred by res judicata from challenging his removal in this appeal. We agree with the administrative judge that the appellant failed to nonfrivolously allege that the offer of an LCA here constituted a personnel action.

The appellant is not collaterally estopped from raising his proposed removal in this appeal. The determination of whether the appellant nonfrivolously alleged that his proposed removal was a personnel action was not necessary to the dismissal of his 2021 IRA appeal for lack of Board jurisdiction. *See Hau*, 123 M.S.P.R. 620, ¶ 13. In fact, the administrative judge in that case found that the appellant's proposed removal constituted a personnel action. 0142-W-1 ID at 4. She dismissed the appeal for lack of jurisdiction based on her conclusion that the appellant had failed to establish jurisdiction over a protected disclosure. *Id.* at 4-7. Thus, the appellant is not precluded from pursuing a claim regarding his proposed removal.

Moreover, a proposed removal is a threatened personnel action over which the Board has IRA jurisdiction. *See Grubb v. Department of the Interior*, 96 M.S.P.R. 361, ¶ 25 (2004). Similarly, the appellant has nonfrivolously alleged that while his proposed removal was pending, he was involuntarily assigned to administrative duties. IAF, Tab 7 at 15. While the appellant does not provide any specific information about how his duties changed, any doubt or ambiguity as to whether he made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6. Therefore, we conclude he met his burden here. *See*

5 U.S.C. § 2302(a)(2)(A)(iv) (defining "personnel action" for purposes of an IRA appeal to include "a detail, transfer, or reassignment").

Regarding the settlement offer of an LCA, the appellant alleged that between January and August 5, 2021, he received three offers of an LCA with copies of a removal decision and was informed that if he did not accept the last chance agreement and waive his pending complaints against the agency, the agency would officially issue the removal decision. IAF, Tab 16 at 12; 0142-I-1 AF, Tab 7 at 88. A threatened action can constitute a personnel action when it warns of future discipline. 5 U.S.C. § 2302(b)(8)-(9) (prohibiting a threat to take a personnel action because of a protected activity or disclosure); *see Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 10 (2015) (explaining that the term "threaten" in 5 U.S.C. § 2302 should be interpreted broadly and can encompass warnings of possible future discipline).

However, the administrative judge found that the agency's offer of an LCA was not a threat to take a personnel action. ID at 10. The appellant appears to dispute this finding on review, observing that the agreement would have required him to withdraw all complaints. PFR File, Tab 4 at 8. We decline to disturb the administrative judge's determination. *Cf. Marler v. Department of Veterans Affairs*, 58 M.S.P.R. 116, 122-23 (1993) (describing an offer to mitigate an action that would otherwise be taken in exchange for an agreement not to file an appeal as "merely an early settlement offer").

As a matter of public policy, the Board encourages settlement agreements, including LCAs, in resolving disputes without litigation. *Kelley v. Department of the Air Force*, 50 M.S.P.R. 635, 640 (1991); *see Delorme v. Department of the Interior*, 124 M.S.P.R. 123, ¶ 17 (2017) (observing that public policy favors settlement agreements, which serve to avoid unnecessary litigation and to encourage fair and speedy resolution of issues); *Tackett v. Department of the Air Force*, 80 M.S.P.R. 624, ¶ 6 (1999) (explaining that the Board has long recognized that an appellant's waiver of appeal rights in an LCA is consistent

with public policy). Settlement offers are inadmissible in the merits of a case. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 3 n.2 (2016). Even beyond these public policy and evidentiary considerations, the practical effect of the last chance agreement offer would have been to lower the planned penalty of removal to a 14-day suspension.[6] 0142-I-1 AF, Tab 7 at 88; IAF, Tab 7 at 8. Had the appellant accepted the LCA, his removal would have been held in abeyance for a period of 3 years, during which time he would have agreed not to engage in any misconduct. IAF, Tab 7 at 8-9. In the event the appellant engaged in misconduct, the agency would implement his removal and the appellant's right to challenge the removal would be waived. *Id.* Thus, we decline to find that the agency's settlement offer to the appellant of an LCA constitutes a personnel action.

Lastly, although a removal is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii), that claim is now barred under res judicata because the issue of whether the appellant was removed in retaliation for his whistleblower activities was already decided in the 0142-I-1 chapter 75 appeal. Res judicata precludes parties from relitigating issues that were, or could have been, raised in the prior action and is applicable if: (1) the prior judgment was rendered by a forum with competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. *Peartree v. U.S. Postal Service*, 66 M.S.P.R. 332, 337 (1995). Here, the Board's final decision in the 2022 removal appeal was decided on the merits, and it specifically stated that the decision was a "Final Order." 0142-I-1 Final Order. The Board has held that generally an individual who appeals his removal directly to the Board is barred by res judicata from bringing, after exhausting his administrative remedies, a second whistleblower appeal challenging the same removal action. *Ryan v. Department of the Air*

---

[6] After the appellant challenged his removal in his 2022 removal appeal, the administrative judge mitigated the penalty to a 30-day suspension. 0142-I-1 ID at 1, 7-8. We have affirmed that finding in a separate final decision. 0142-I-1 Final Order.

*Force*, 113 M.S.P.R. 27, ¶ 13 (2009); *see Sabersky v. Department of Justice*, 91 M.S.P.R. 210, ¶¶ 2-3, 7-8 (2002) (finding that an individual who appeals his removal directly to the Board is barred by res judicata from bringing, after exhausting the OSC process, an IRA appeal alleging that the same removal action was motivated by whistleblower reprisal), *aff'd per curiam*, 61 Fed. Appx. 676 (Fed. Cir. 2003). Thus, we find that the elements of res judicata are satisfied, and the appellant is therefore precluded from challenging the removal action once again in this IRA appeal. The only personnel actions properly before us are the appellant's proposed removal and placement on administrative duty.

<u>The appellant nonfrivolously alleged that his March 2020 protected disclosure was a contributing factor in the proposed removal and placement on administrative duty.</u>

The administrative judge concluded, without providing an explanation, that the appellant failed to nonfrivolously allege that his protected disclosures or activity contributed to a personnel action. ID at 15.

An appellant's protected activity is a contributing factor if it in any way affects an agency's decision to take, or fail to take, a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which he submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 63. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures or activity satisfies the timing portion of the knowledge/timing test. *Id.*

The appellant alleged that his March 24, 2020 emails to a union official and management caused the agency to propose his removal on January 14, 2021. IAF,

Tab 5 at 6, 12-13, 15. Therefore, the appellant's allegations are sufficient to meet his jurisdictional burden as to the timing prong of the knowledge/timing test, as it concerns his proposed removal and placement on administrative duty.

We also conclude that the appellant nonfrivolously alleged that the agency official who proposed his removal had constructive knowledge of the appellant's March 24, 2020 disclosures. An appellant can show that a disclosure or activity was a contributing factor in a personnel action by proving that the official taking the action had constructive knowledge of the disclosure or activity. *Dorney*, 117 M.S.P.R. 480, ¶ 11. An appellant may establish constructive knowledge by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id.* The record below reflects that the appellant sent one of his March 24, 2020 emails directly to the OIT Area Manager. IAF, Tab 6 at 63. The appellant alleged that the OIT Area Manager, who was a subject of this disclosure, provided information that led to his proposed removal. IAF, Tab 16 at 6. Thus, the appellant has made nonfrivolous allegations regarding the knowledge prong of the knowledge/timing test.

In cases such as this one, when the appellant has alleged multiple personnel actions, the Board has jurisdiction when the appellant exhausts his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure or activity. *Skarada*, 2022 MSPB 17, ¶ 13. Therefore, we find it appropriate to remand this appeal for a determination on the merits. Before proceeding to the merits, the administrative judge should make findings as to whether the appellant has met his burden to nonfrivolously allege that protected activities (5), (7), (8), (9), or (11) was a contributing factor in the proposed removal and placement on administrative duty. If so, she should adjudicate those matters on the merits as well.

**ORDER**

For the reasons discussed above, we remand this case to the field office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.